# United States District Court

SOUTHERN DISTRICT OF IOWA

UNITED STATES OF AMERICA

v.

**CRIMINAL COMPLAINT**

ROSCOE CHAMBERS,
a.k.a. Tommy

CASE NUMBER: 3:12-mj-65

RECEIVED JUL 0 6 2012 CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF IOWA

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief.

**Count 1**

On or about June 24, 2012, in the Southern District of Iowa, the defendant, ROSCOE CHAMBERS, also known as Tommy, did knowingly possess with the intent to distribute at least 28 grams of a mixture or substance containing cocaine base, also known as "crack cocaine," a Schedule II controlled substance. This was a violation of Title 21, United States Code, §§ 841(a)(1) and 841(b)(1)(B).

I further state that I am a(n)  DPD-Kevin Smull  and that this Complaint is based on the following facts:

See Affidavit attached and incorporated hereto.

Continued on the attached sheet and made a part hereof:  ☒ Yes  ☐ No

_____
Kevin Smull
Davenport Police Officer

Sworn to before me and subscribed in my presence,

July 6, 2012  at  Davenport, Iowa
Date                              City and State

Thomas J. Shields, Chief Magistrate Judge,
Southern District of Iowa
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

AFFIDAVIT

UNITED STATES OF AMERICA )
) ss
SOUTHERN DISTRICT OF IOWA )

I, Sgt. Kevin Smull being duly sworn state and depose as follows:

1. I have been employed as a police officer with the Davenport Police Department for 18 years. During that time, I have participated in numerous narcotic investigations involving the distribution and transportation of controlled substances, manufacture of controlled substances, and sales of controlled substances, including cocaine base, also known as crack cocaine. As part of these narcotics investigations, I have interviewed and spoken to numerous individuals about the common methods used to obtain, manufacture, package, distribute and use crack cocaine. Relatedly, I have observed on numerous occasions various quantities of crack cocaine, and am familiar with the appearance and form of crack cocaine, in addition to the common weights and methods that crack cocaine is ingested and distributed. I am aware of the information set forth below through observations, discussions with other law enforcement officers, and the review of police reports. The following contains some, but not all, of the information known to this affiant.

2. This affidavit is in support of a complaint charging Roscoe Chambers (xx-xx-1971) with the crime of possession with intent to distribute crack cocaine (cocaine base).

3. On 06-23-12 a Davenport Police Department (DPD), Tactical Operations Bureau (TOB) informant arranged to purchase $100.00 of crack cocaine from Roscoe Chambers (AKA Tommy). This informant is a known drug user and addict. The informant has a prior conviction for OWI. The informant placed a recorded phone call to an individual the informant later identified as Roscoe Chambers at xxx-2049 to make the arrangements. The meet location was established at the Rusty Nail Bar located on W Locust St. in Davenport, Iowa. Davenport is in

the Southern District of Iowa. Prior to the purchase, the informant and informant's vehicle were searched for the presence of contraband and none was found. The informant was provided a recording device and $100 in pre-recorded buy funds. Surveillance was established by other DPD officers in the area of this bar. Prior to the controlled purchase, the informant had provided a description of Chambers vehicle and the plate number (red Ford Taurus Illinois P330026). After surveillance was set, Chambers arrived in a vehicle similar in description and matching the license plate number provided by the informant. DPD officers observed the informant enter the front passenger seat of Chambers' car. After a short period of time, the informant exited the car and Chambers left the area. Prior to the controlled purchase, affiant was provided a photograph of Roscoe Chambers. As Chambers left the parking lot, this affiant positively identified him as the driver of the vehicle. After the transaction, DPD Det. Koepke met with the informant where the informant turned over the crack cocaine purchased (.95 grams). The crack cocaine was field tested and the substance tested positive for cocaine. DPD officers followed Chambers from the Rusty Nail to an apartment building on Marquette St in Davenport where he parked the car and entered the north side of the apartment building.

4. After the controlled purchase, DPD conducted a search of the person and vehicle of the informant. No contraband was found. The informant described getting into the Ford Taurus and receiving crack cocaine from Chambers. The informant provided Chambers with the pre-recorded $100 in buy funds. The informant observed Chambers in possession of additional quantities of crack cocaine. During the transaction, Chambers told the informant he was looking to purchase handguns. The informant was shown a photograph of Roscoe Chambers and identified Chambers as the subject who provided him crack cocaine.

5. On 06/24/12 DPD Det. Koepke drafted a state search warrant for an apartment on Marquette St, the person of Roscoe Chambers and the identified Ford Taurus license #P330026. Det. Koepke had obtained information for the utilities for this Marquette St apartment and learned through Mid American that the utilities for the specific apartment in question were in the name of Roscoe Chambers. The search warrant was presented to a state magistrate judge and signed on 06/24/12.

6. On 06/24/12, the same informant placed a recorded phone call to Chambers at xxx-2049 to arrange the purchase of $100 dollars of crack cocaine. Chambers told the informant to meet him at the Rusty Nail parking lot. DPD officers conducting surveillance at the identified apartment on Marquette St observed the same Ford Taurus observed on 06/23 parked in the parking lot. After the phone call, DPD officers also set up surveillance at the Rusty Nail. The informant was provided $100 in pre-recorded buy funds and a recording device. The informant was searched for contraband with none found. After a short period of time following the recorded phone call, a person matching Chambers physical description exited the north side of apartment building and approached the red Ford. This person entered the car and left. Surveillance followed this vehicle to the Rusty Nail parking lot. The informant met Chambers where the crack cocaine transaction took place. After the informant walked away from Chambers car another male white, later identified as David Hazelwood, stopped and appeared to be making contact with Chambers through the car window. After a short meet, Hazelwood walked away. Det. Koepke met with the informant where 1.05 grams of crack cocaine was turned over. The crack cocaine was field tested and the substance tested positive for cocaine. The informant was again searched with no contraband found.

7. The informant was later debriefed. The informant described making arrangements for the purchase of crack cocaine from Chambers. In a phone call, Chamber directed the informant to meet him in the same location as on 06/23. After the informant arrived at the Rusty Nail parking lot, the informant got out and approached the Ford Taurus. The informant leaned in the passenger window and provided Chambers with $100 in pre-recorded buy funds in exchange for crack cocaine.

8. It was determined at this time, DPD would execute the search warrant on Chambers, his vehicle and the Marquette St residence. Prior to arranging the second buy, affiant had recruited DPD EST (Emergency Service Team) to assist in the take down of Chambers and the execution of the search warrant at his residence. EST approached Chambers as he remained sitting in his car and took him into custody. DPD officers also approached Hazelwood and detained him pending an interview. A secondary EST team executed the search warrant at the identified apartment on Marquette St.

9. After Chambers was secured, the Ford Taurus was searched where officers later recovered $100 dollars of TOB buy fund money used in the 6/24 controlled purchase of crack cocaine. Officers also seized a cell phone with a number matching the one called by the informant to arrange the 6/23 and 6/24 controlled purchases. A search was done of Hazelwood's vehicle and .2 grams of crack cocaine was recovered. During an interview on 6/24, Hazelwood admitted the crack cocaine found in his truck came from Chambers. In a subsequent interview on 6/26, Hazelwood both denied ever buying crack cocaine from Chambers, and admitted purchasing crack cocaine from Chambers on three to four prior occasions.

10. A search was done of the Marquette St apartment where the following items were found:

$759.00 cash (contained $100 TOB buy funds from 06/23/12 controlled purchase)

82 grams of crack cocaine (in three locations; some broken down in smaller pieces and packaged)

5 ecstasy pills

Cell phone

Razor blade containing cocaine residue

Indicia for Chambers

The crack cocaine recovered was field tested and the substance tested positive for cocaine.

11. Based on the education, training and experience of the affiant, the facts surrounding and the substances purchased during the above described controlled purchases on 6/23 and 6/24, the weights, and the packaging and other items seized from the apartment on 6/24, the affiant is of the opinion that the substances seized from the Marquette St apartment on 6/24 were crack cocaine and were held for the distribution to others, and not personal usage.

_____
Sgt. Kevin Smull 0635

Signed and sworn before me this 6 day of July, 2012

_____
Thomas J. Shields
Chief United States Magistrate Judge
Southern District of Iowa